In re Andy BELL, Debtor.

James W. McROBERTS, Chapter 13 Trustee, Plaintiff,

v.

TRANSOUTH FINANCIAL, Defendant.

In re Damion HILL, Debtor.

James W. McROBERTS, Chapter 13 Trustee, Plaintiff,

v.

FORD MOTOR CREDIT, Defendant (two cases).

In re Gloria JACKSON, Debtor.

In re Tod and Colleen MARMINO, Debtors.

James W. McROBERTS, Chapter 13 Trustee, Plaintiff,

v.

LACLEDE CREDIT UNION, Defendant.

Bankruptcy Nos. BK 95–31075, BK 95–31839, BK 95–31433, and BK 94–50869.

Adv. Nos. 95–3148, 95–3265, 95–3223 and 95–5109.

United States Bankruptcy Court, S.D. Illinois.

April 1, 1996.

James W. McRoberts, Belleville, IL, for plaintiffs.

Nancy Handegan, Decatur, IL, for Transouth.

John Sutherland, St. Louis, MO, for Mercantile Bank.

194

Thomas J. Noonan, St. Louis, MO, for Ford Motor Credit.

Lanny Darr, Alton, IL, for Laclede Credit Union.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

The Chapter 13 cases under consideration present a common factual scenario. In each case, the debtor borrowed money prior to bankruptcy to purchase a vehicle and granted the creditor a security interest in the vehicle. The creditor's lien, however, was never recorded on the vehicle's certificate of title. The debtor then filed for relief under Chapter 13 of the Bankruptcy Code, and the Chapter 13 trustee brought an action under 11 U.S.C. § 544(a)(1) to avoid the lien as an unperfected security interest.

While the defendant creditors raise various issues in arguing that their liens should not be avoided, the Court's focus in this opinion is on the effect of such avoidance in a Chapter 13 case in which the subject property is not liquidated by the trustee but is retained by the debtor upon completion of the Chapter 13 proceeding. Specifically, the Court will address what rights, if any, a creditor possesses after avoidance of its lien and whether such avoidance results in a windfall to the debtor, who will obtain a vehicle free and clear of liens after paying a percentage of the creditor's claim as unsecured under the Chapter 13 plan.

### I. Facts [1]

*McRoberts v. Laclede Credit Union*
*(In re Marmino)*

In November 1993, defendant Laclede Credit Union ("Laclede") financed the purchase of a 1991 Ford truck for debtors Tod and Colleen Marmino, and the debtors granted Laclede a security interest in the vehicle as collateral for the loan. Laclede provided the dealership that sold the vehicle with the information necessary to perfect the lien and followed its normal practice of allowing the dealership to record the lien and forward the title to the Secretary of State for processing. The dealership, however, failed to record Laclede's lien on the certificate of title, and, consequently, the title was returned to the debtors after processing without notation of Laclede's security interest. Laclede made at least one attempt, prior to the debtors' bankruptcy, to recover the title so that its lien could be recorded, but was unable to do so.

On November 16, 1994, the Marminos filed their Chapter 13 bankruptcy petition, listing Laclede as an unsecured creditor with regard to the indebtedness on the truck. Laclede filed a proof of claim alleging a security interest in the truck, and the Chapter 13 trustee filed a complaint to avoid Laclede's lien pursuant to 11 U.S.C. § 544(a)(1). On September 22, 1995, prior to resolution of the trustee's complaint, the debtors' Chapter 13 plan was confirmed without objection by Laclede.

*James W. McRoberts v. Transouth Financial (In re Bell)*
*James W. McRoberts v. Ford Motor Credit (In re Hill)*
*James W. McRoberts v. Ford Motor Credit (In re Jackson)*

The remaining debtors, all Illinois residents, each purchased a vehicle prior to bankruptcy from a Missouri dealer and executed a retail installment contract, granting the dealer a security interest in the vehicle. At the time of sale, the dealer presented the debtor with the original certificate of title and instructed the debtor to pay the sales tax on the vehicle,[2] leaving the responsibility of obtaining a new Illinois certificate of title with the debtor. In each case, the dealer then assigned its retail installment contract to one of the defendant credit companies.

---

1. The facts are undisputed in each of the following cases.

2. Under Missouri law, the purchaser of a vehicle is required to pay the sales tax on the vehicle. Section 144.069 of the Missouri tax statute provides:

All sales of motor vehicles ... shall be deemed to be consummated at the address of the owner thereof, and all applicable sales taxes levied by any political subdivision shall be collected on such sales by the state department of revenue on that basis....
Mo.Rev.Stat. § 144.069 (1995).

Thereafter, each of the debtors sought relief under Chapter 13 of the Bankruptcy Code. In each instance, at the time of filing, the debtor had neither paid the sales tax nor obtained an Illinois certificate of title, and the creditor's lien was not indicated on the title. Despite this, each of the debtors listed the vehicle loan as "secured" in their bankruptcy schedules and proposed to treat the obligation as secured in their Chapter 13 plan. In addition, in each instance, the creditor filed a proof of claim alleging a security interest in the debtor's vehicle. The Chapter 13 trustee filed a complaint to avoid the creditor's lien pursuant to 11 U.S.C. § 544(a)(1), arguing that because the creditor did not hold a properly perfected security interest, its lien should be avoided and its claim treated as unsecured.

The Chapter 13 plan of debtor Bell was confirmed in August 1995,[3] while confirmation in the cases of debtors Hill and Jackson was delayed pending the Court's determination of the trustee's lien avoidance complaints. In the latter case, the trustee and Ford Motor Credit objected to confirmation on the basis that the plan would not complete as proposed.[4] These objections are presently before the Court along with a motion for relief from stay filed by Ford Motor Credit in debtor Hill's case, all of which turn on resolution of the issue of the effect of § 544(a)(1) lien avoidance in these Chapter 13 cases.

## II. Discussion

■ Section 544(a)(1) provides that a bankruptcy trustee acquires, as of the commencement of a case, the status of a hypothetical judicial lien creditor and "may avoid" any lien or encumbrance on property of the debtor that is voidable by such a creditor under state law.[5] Under this provision, federal and state law work in tandem. First, the substance of the trustee's rights as judicial lien creditor—primarily the priority of his claim in relation to other interests in the property—is determined by reference to state law. If the trustee has priority over a third party's interest under state law, federal law prescribes the consequence. Under § 544(a)(1), the trustee may entirely avoid the inferior third-party interest in the property, and the third party is left with only an unsecured claim against the debtor's estate. *See, e.g., Matter of Wheaton Oaks Office Partners Ltd. Partnership,* 27 F.3d 1234, 1244 (7th Cir.1994); *In re Pacific Express, Inc.,* 780 F.2d 1482, 1486 (9th Cir.1986); *In re Freeman,* 72 B.R. 850, 855 (Bankr.E.D.Va. 1987).

■ This result obtains even if state law provides that the competing interest is subordinate, rather than void, as to a judicial lienholder. State law generally ranks interests in priority so that a subordinate junior interest is not voided but survives and is paid from any surplus value that remains after senior claims are paid. Nevertheless, and notwithstanding the literal language of § 544(a)(1), an interest that is merely subordinate to the claim of a judicial lienholder under state law is completely eliminated in bankruptcy as a matter of federal law. 2 David G. Epstein, Steve H. Nickles, & James J. White, *Bankruptcy,* § 6–61, at 111, n. 12 (1992); *see also* 3 William L. Norton, Jr., *Norton Bankruptcy Law and Practice 2d,* § 54:4, at 54–13 (1994).

■ In the cases before the Court, applicable Illinois law provides that an unperfect-

3. Although debtor Bell's plan was confirmed without objection by the trustee, the Court finds that the trustee's lien avoidance complaint—filed prior to confirmation—provided sufficient notice to creditor Transouth Financial that the trustee objected to treatment of its claim as secured.

4. The trustee filed a similar objection to confirmation in debtor Hill's case, but that objection is not before the Court at this time.

5. Section 544(a)(1) states:
(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.
11 U.S.C. § 544(a)(1).

ed security interest in a motor vehicle is subordinate to a judgment lien such as that held by the trustee under § 544(a). *See United States v. Rotherham*, 836 F.2d 359, 364–65 (7th Cir.1988); *Matter of Keidel*, 613 F.2d 172, 173 (7th Cir.1980). The Illinois Vehicle Code sets forth the requirements for perfection of a security interest in a motor vehicle[6] and provides that an unperfected security interest in a vehicle "is not valid against subsequent transferees or lienholders of the vehicle...." 625 ILCS 5/3–202(a). The Uniform Commercial Code further provides, regarding the priority of competing interests in a vehicle, that "an unperfected security interest is subordinate to the rights of ... (b) a person who becomes a lien creditor before the security interest is perfected." 810 ILCS 5/9–301(1)(b).[7] Since, in these cases, the trustee as of the date of filing had the rights of a lien creditor with priority over the unperfected security interests of the defendant creditors, these interests may be entirely avoided by the trustee under 11 U.S.C. § 544(a)(1). Accordingly, the creditors' interests are eliminated as to the subject vehicles, and their claims survive only as unsecured claims against the debtors' estates. *See* Epstein, *supra*, § 6–61, at 111.

■ The creditors, in an effort to avoid this unfavorable result, argue that the Court should exercise its equitable powers and deem their security interests perfected by way of equitable liens because the parties intended the creditors' interests to be secured and it was due to the debtors' inaction or failure to cooperate that the creditors' liens were not properly recorded on the vehicles' titles. The Court rejects this argument, as it has previously ruled that equitable liens arising under state law are contrary to the

letter and purpose of the Bankruptcy Code and are, therefore, ineffective against a trustee's § 544(a) avoiding powers. *See In re Wiggs*, 87 B.R. 57, 59 (Bankr.S.D.Ill.1988).

■ The creditors additionally assert that the trustee is without standing to bring these lien avoidance actions because a Chapter 13 trustee serves only a limited administrative function of objecting to claims and ensuring compliance with confirmation requirements and plan provisions. This argument, too, is foreclosed by a previous ruling of the Court. In *In re Ervin*, Adv. No. 95–3167, slip op. at 9 (Bankr.S.D.Ill. Nov. 15, 1995), the Court held that a Chapter 13 trustee has both statutory and constitutional standing to avoid unperfected liens under § 544(a) when such avoidance would increase the amount of disposable income to be allocated among unsecured creditors and thus benefit the estate. *See also In re Bequette*, 184 B.R. 327, 333 (Bankr.S.D.Ill.1995) (Chapter 13 trustee has statutory authority to bring lien avoidance actions pursuant to 11 U.S.C. § 103(a)). Since, in these cases, avoidance of the creditors' liens would increase the proportion of the debtors' income to be paid to other unsecured creditors under their Chapter 13 plans, the trustee may properly exercise his avoidance power, and the creditors' standing argument is without merit.

The creditors further contend that despite the superiority of the trustee's claim as hypothetical lien creditor in the context of these bankruptcy proceedings, their unperfected security interests remain enforceable as between the debtors and themselves and thus survive as effective liens when property of the Chapter 13 estate revests in the debtors upon confirmation.[8] The creditors cite the

---

6. The Code specifies that a security interest in a motor vehicle is perfected by

delivery to the Secretary of State of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the required fee. 625 ILCS 5/3–202(b) (1993). In these cases, it is undisputed that the creditors' security interests were unperfected as of the date of filing.

7. "Lien creditor" is defined under § 9–301 to include "a trustee in bankruptcy from the date of the filing of the petition...." 810 ILCS 5/9–301(3).

8. Under § 1327(b), confirmation of a Chapter 13 plan vests all property of the estate in the debtor, "except as otherwise provided in the plan or the order confirming the plan." 11 U.S.C. § 1327(b). The Chapter 13 plans here at issue provide for such revesting of property in the debtor upon confirmation (except for the debtors' post-petition income), and the Court's form confirmation order makes no provision otherwise.

rule that "failure to perfect a lien as to third parties does not invalidate a lender's security interest as against the original borrowers," *First Galesburg Nat'l Bank & Trust Co. v. Martin,* 58 Ill.App.3d 113, 15 Ill.Dec. 603, 604, 373 N.E.2d 1075, 1076 (1978), and also invoke the maxim that a bankruptcy discharge, being personal to the debtor, does not discharge *in rem* liability or release liens or security interests in the debtor's property. *See In re Cortez,* 191 B.R. 174, 178 (9th Cir. BAP 1995); *In re Glow,* 111 B.R. 209, 220–21 (Bankr.N.D.Ind.1990). The creditors reason that although they may be treated as unsecured creditors in the debtors' Chapter 13 cases, they are still entitled to enforce their liens against the debtors' property and thus seek recovery of the subject vehicles upon completion of the bankruptcy proceedings.

■ The creditors' argument is misplaced in that it overlooks the consequences of a trustee's avoidance of liens under federal bankruptcy law. A lien is avoided under § 544(a) as a transfer of the debtor's interest in property,[9] and the consequence of such avoidance is nullification of the transfer. This nullification means that the transfer is retroactively ineffective and that the transferee—here, the defendant creditors—legally acquired nothing through it. *See* Epstein, *supra,* § 6–79, at 201.[10] In the present cases, the trustee's avoidance of the creditors' liens results in nullification of the transfer of property represented by those liens,

and the security transactions are ineffective not only as to the trustee but also as to the debtor and creditor themselves as the immediate parties to the transactions.

This proposition—that avoidance entails nullification of the creditors' lien transactions—is included by negative implication in the very cases relied upon by the creditors in contending that their liens survive the debtors' discharge. In *Glow,* no lien avoidance action was filed in the debtor's Chapter 13 proceeding, and the court specifically stated that the creditor's lien survived unimpaired where "[no steps were taken] to avoid the lien ... by an independent adversary proceeding attacking the lien." 111 B.R. at 221. Similarly, in *Cortez,* the court held that although the creditor's unperfected lien was subject to avoidance under § 544 during the debtor's bankruptcy, it survived the bankruptcy "because it was not avoided [by the trustee]." 191 B.R. at 178.[11] In the cases here, by contrast, the trustee has taken affirmative action to avoid the creditors' liens by filing adversary proceedings under § 544(a). The Court, therefore, finds no basis for the creditors' contention that their liens remain viable following the debtors' bankruptcy.

■ While lien avoidance under § 544(a) renders a security transaction ineffective as between the parties, the avoided lien does not simply vanish but is preserved for the benefit of the estate pursuant to 11 U.S.C. § 551.[12] The former lienholder's interest in

9. "Lien" is defined under the Code as an "interest in property" to secure payment of a debt, 11 U.S.C. § 101(37), while "transfer" means every mode of "parting with property or an interest in property." 11 U.S.C. § 101(54). Section 544(a) allows the trustee to avoid any "transfer of property of the debtor" that is voidable under state law. Thus, the trustee avoids a lien under § 544(a) as a transfer of the debtor's interest in property.

10. "Avoid" is commonly understood to mean "to make legally void, annul." To deny it this effect is to exclude the word from the Code. *Id..,* § 6–80, at 204.

11. In a recent opinion, the Seventh Circuit Court of Appeals held that a creditor's lien was extinguished by confirmation of a Chapter 11 plan which provided for payment of the creditor's proof of claim but made no provision for preservation of the lien. *In re Penrod,* 50 F.3d 459,

462–63 (7th Cir.1995). While it is arguable, following this decision, that an avoidance action is not *necessary* to extinguish a creditor's lien in a Chapter 13 proceeding, it is clear that such an action is *sufficient* to do so. *Cf. Cen–Pen Corp. v. Hanson,* 58 F.3d 89, 92 (4th Cir.1995) (holding, contrary to *Penrod,* that "unless ... appropriate affirmative action [is taken] to avoid a security interest in property of the estate, that property will remain subject to the security interest following confirmation").

12. Section 551 states:

Any transfer avoided under section ... 544 ... of this title ... is preserved for the benefit of the estate but only with respect to property of the estate.

11 U.S.C. § 551. The intended effect of this provision is to prevent junior lienholders from improving their position at the expense of the estate when a senior lien is avoided. *See* Ep-

the debtor's property automatically becomes property of the estate, *see* 11 U.S.C. § 541(a)(4) (property of the estate includes "[a]ny interest in property preserved for the benefit of ... the estate under [§ 551]"), and merges with any residual interest in the debtor which passed to the estate when the bankruptcy case commenced. Epstein, *supra*, § 6–80, at 206; *see* 4 *Collier on Bankruptcy*, ¶ 551.01, at 551–1, n. 3 (15th ed. 1996). Thus, in a Chapter 13 case, when property of the estate subsequently vests in the debtor upon confirmation of the Chapter 13 plan, *see* 11 U.S.C. § 1327(b), the debtor acquires his previously encumbered asset free and clear of the avoided lien—subject only to reinstatement of the lien if the case is dismissed prior to the debtor's discharge.[13]

■ Application of these principles in each of the present cases results in the debtor obtaining a vehicle free of the lien granted to secure its purchase price, while paying the creditor only a portion of its claim as an unsecured creditor under the debtor's Chapter 13 plan. The creditors term this result an "abuse" of the bankruptcy process. The Court notes, however, that the creditors could have easily prevented this alleged "abuse" by tightening their procedures for ensuring that the liens were properly recorded on the vehicle titles. *See Keidel*, 613 F.2d at 174.[14] Nevertheless, the Bankruptcy Code does not leave these creditors without protection. Rather, as one of the provisions designed to safeguard the rights of Chapter 13 creditors, *see Johnson v. Home State Bank*, 501 U.S. 78, 87–88, 111 S.Ct. 2150, 2156, 115 L.Ed.2d 66 (1991), the Code assures that unsecured creditors in a Chapter 13 case will receive at least as much as they would have received if the estate were liquidated under Chapter 7. *See* 11 U.S.C. § 1325(a)(4).[15] This provision, known as the "best interests of creditors" test, essentially requires the debtor to pay for his non-exempt assets over the term of the plan. *See In re Moore*, 188 B.R. 671, 676 (Bankr.D.Idaho 1995). Thus, although the debtors in these Chapter 13 cases will retain the subject vehicles following bankruptcy, they will have "purchased" them by paying into the plan an amount of money equal to their value as of the effective date of the plan. This amount will be distributed among unsecured creditors of the estate, including the defendant creditors who will receive a substantial portion of their now unsecured claims. While the creditors in these cases, by not perfecting their liens, have forfeited their preferred position in the distribution of plan payments, no windfall results to the debtors, who must pay into the plan as much as if the subject vehicles were liquidated for the benefit of estate creditors in a Chapter 7 case.

For the reasons stated in this opinion, the Court finds that judgment should enter for the Chapter 13 trustee and against the defendant creditors in the trustee's lien avoidance actions under § 544(a)(1). In order to protect the creditors' interests in the event their liens are reinstated upon dismissal of the debtors' cases prior to discharge, the Court finds that the debtors should be prohibited from transferring the subject vehicles

stein, *supra*, § 6–86, at 218. "[T]he trustee representing the estate retains the lien and the priority position of the avoided senior [lien]." *In re Losieniecki*, 17 B.R. 136, 139–40 (Bankr.W.D.Pa. 1981).

**13.** Under § 349(b), dismissal of a case "reinstates ... any transfer avoided under [§ 544] or preserved under [§ 551]." 11 U.S.C. § 349(b)(1)(B). While a Chapter 13 debtor has an unfettered right to dismiss his case at any time, such dismissal would reinstate any avoided liens and restore the creditor's full prepetition claim against the debtor's property. *See In re Scheierl*, 176 B.R. 498, 504–5 (Bankr.D.Minn. 1995).

**14.** In *Keidel*, as in these cases, the debtor failed to apply for a new certificate of title showing the bank's lien despite the bank's instruction to do so. The court stated that the bank could have enforced the requirement that the debtor deliver the old certificate along with an application and the required fee "by making [performance of this duty] a condition of advancing funds." *Id.*

**15.** Under § 1325(a)(4), the court may confirm a Chapter 13 plan only if

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 ... on such date.

11 U.S.C. § 1325(a)(4).

until further order of the Court or until their Chapter 13 plans have been completed and their orders of discharge entered. In addition, the Court finds that the motion for relief from stay filed in debtor Hill's case by Ford Motor Credit should be denied, since Ford Motor Credit has no claim to the debtor's vehicle as an unsecured creditor of the estate. Likewise, the objections to confirmation filed in debtor Jackson's case by the trustee and Ford Motor Credit will be overruled in accordance with the Court's previous determination that these objections would fail if the lien of Ford Motor Credit were avoided.

SEE WRITTEN ORDER.