**DUNES HOTEL ASSOCIATES, a South Carolina General Partnership, Debtor, and Debtor-in Possession, Appellant,**

v.

**HYATT CORPORATION, a Delaware Corporation, and S.C. Hyatt Corporation, a South Carolina Corporation, Appellee.**

No. C/A 2:98–535–18.

United States District Court,
D. South Carolina,
Charleston Division.

Feb. 18, 2000.

Edward Menzie & Julio E. Mendoza, Columbia, SC, John J. Dawson, Phoenix, AZ, Michael Stone, Phoenix, AZ, for plaintiff.

Michael M. Beal, Columbia, SC, Michael Sca dato, Charleston, SC, Claude Montgomery, New York City, Barry Montgomery, Chicago, IL, for defendant.

## ORDER

NORTON, District Judge.

This Order has taken such a long time in coming to fruition that the parties could be forgiven for supposing that this court has been feverishly riffling through its judicial drawers in an attempt to find a fleeting moment of satori or to locate a talisman to ward away the Gordian knot of issues raised by this appeal. It has not. Instead, once the court was subjected to this bankruptcy appeal, it embarked on an Odyssean journey through the analytical labyrinth of the numerous applicable Bankruptcy Code provisions, as this appeal presents a seemingly intractable and complex set of legal issues that often go to the very heart of the meaning of a number of key Bankruptcy Code provisions, and indeed to the purpose of the Code itself. Such an ordeal has taken time to properly sift through these numerous issues.

### I. BACKGROUND FACTS

Dunes Hotel Associates is a general partnership with no employees. The general partners are corporations ultimately affiliated with the General Electric Pension Trust (GEPT). GEPT is a New York common-law trust with net assets of approximately $23 billion.[1] All decisions re-

---

1. By comparison in 1994, the Gross Domestic Product of Costa Rica was $8.28 billion, Luxembourg was $12.5 billion, Yugoslavia was $10 billion, Bolivia was $5.51 billion, Equador was $16.36 billion, Syria was $17.24 billion, Lithuania was $5.22 billion,

garding Dunes are made by or on behalf of the Trustees of GEPT. Dunes's primary asset is a hotel on Hilton Head Island, South Carolina. A South Carolina affiliate of the Hyatt Corporation operates the hotel pursuant to a long-term real property lease. If Hyatt decides to exercise its option to renew, then the lease will not expire until December 31, 2016. For some unknown reason, the lease was not recorded. This inexplicable oversight planted the seed that has been fertilized by untold hours billed by a phalanx of lawyers and has ultimately ripened into this appeal.

In 1986, Aetna Life Insurance Company loaned Dunes $50 million in exchange for a non-recourse note secured by a mortgage on the hotel and an assignment of the lease. Of that sum, $23.6 million passed through Dunes to its two partners, which are both corporations wholly owned by GEPT. The note matured on July 1, 1994, at which time Dunes owed a balloon payment that it was unable to pay. Aetna filed a foreclosure action against the hotel property. Dunes alleges that its unfavorable lease with Hyatt prevented it from selling the hotel or obtaining sufficient refinancing to pay its debts. On November 18, 1994, Dunes filed for relief under Chapter 11 of the Bankruptcy Code.

## II. PROCEDURAL HISTORY

This case has been on a long and tedious journey through the federal court system. The relevant procedural history is briefly summarized below.

### A. Initial Filing under Chapter 11

In November 1994, shortly before a hearing in Aetna's foreclosure action, Dunes filed for relief under Chapter 11. Dunes claimed to have had two purposes for filing its Chapter 11 case: (1) to reorganize and save the hotel from foreclosure by Aetna; and (2) to obtain relief from the Hyatt lease and Hyatt's allegedly inadequate performance under the lease, so as

to be able to reorganize and realize the full value of the hotel.

### B. Initial Case Dismissal Motions

In February 1995, both Aetna and Hyatt filed motions seeking dismissal of the Dunes case because they alleged that it was filed in bad faith. The bankruptcy court denied these motions. The bankruptcy court determined that it would not treat a solvent debtor's invocation of the powers to avoid a contract as a *per se* indication of bad faith, at least not while an independent third-party creditor like Aetna could benefit from the reorganization.

### C. Dunes's Reorganization Plan and Aetna Refinancing

On September 27, 1995, at the hearing on confirmation of Dunes's Reorganization Plan, Aetna agreed to Dunes's plan after Aetna accepted a refinancing option that involved the sale of the Aetna claim to GEPT for a cash payment of $49 million, less than the full amount of the disputed claim alleged by Aetna. Aetna acknowledged that its claim was impaired and accepted receipt of the refinancing proceeds as a direct and substantial benefit to Aetna as a creditor of Dunes. The bankruptcy court approved the purchase and vote change, but reserved ruling on whether the Aetna vote could be counted as an acceptance by an impaired class for "cramdown" or whether Aetna received any "benefit" to which it would not otherwise be entitled. Despite its statements at the hearing that the funding of the Aetna claim was unconditional, GEPT subsequently conditioned its funding on Dunes's pursuit of the avoidance action against the Hyatt lease. On January 26, 1996, the bankruptcy court denied confirmation of the plan.

### D. The Hyatt Adversary Litigation

On February 27, 1995, Dunes filed the Hyatt Adversary Litigation seeking, *inter alia*, avoidance under Bankruptcy Code

and Paraguay was $7.75 billion. *See* Micro-

soft Encarta 97 World Atlas.

§ 544(a) of Hyatt's unrecorded leasehold interest in the hotel. The bankruptcy court held that Hyatt's claim under the unrecorded lease was avoidable under § 544(a). This ruling was never appealed. However, the bankruptcy court proceeded to grant summary judgment against Dunes and dismissed Dunes's avoidance action because its pursuit of an avoidance claim under § 544(a) required Dunes to satisfy § 550's requirement that the avoidance benefit Dunes's estate. The bankruptcy court found that Dunes failed to satisfy the "benefit of the estate" requirement because avoidance would only provide a windfall to Dunes and its equity holder, GEPT.

Dunes appealed the bankruptcy court's avoidance decision to this court. This court affirmed the bankruptcy court. After the Bankruptcy Court of the District of Maryland decided an allegedly similar case, Dunes asked this court to reconsider its order affirming the bankruptcy court. This court declined to reconsider the affirmance in light of new, non-mandatory authority on an issue not argued before the bankruptcy court. Dunes appealed to the Fourth Circuit, but the court found Dunes's appeal to be interlocutory.

### E. Proceedings Regarding the Dismissal Order

On June 27, 1997, Hyatt filed a second motion asking the bankruptcy court to order dismissal of Dunes's Chapter 11 case. Before the bankruptcy court heard Hyatt's Second Dismissal Motion, Dunes filed another modified plan that included a commitment to pay fully and in cash any allowable claims, did not change the treatment of the Aetna claim, and continued to reserve the right of Dunes to pursue the avoidance claim against Hyatt. The bankruptcy court concluded that "[a]fter nearly three (3) hard-fought years, it [wa]s clear ... that this case is no more than a litigation tactic to terminate the Lease between Dunes and Hyatt for the benefit of Dunes'[s] equity holder." (Bankr.Dismiss-

al Order, dated Sept. 26, 1997 at 13) On September 26, 1997, the bankruptcy court dismissed Dunes's Chapter 11 case for five reasons. First, Dunes had been unable to confirm a plan in three years. Second, the unreasonable delay of bankruptcy had been prejudicial to creditors. Third, Dunes had maintained and prosecuted the case in bad faith, using Chapter 11 as a litigation tactic to benefit insiders. Fourth, each proposed plan contained avoidance provisions in contravention of the bankruptcy court's order and the district court's affirmance. Finally, no bankruptcy purpose was being served by the continued maintenance of the case. According to Dunes, the validity of the dismissal order is dependent upon the substantive correctness of the bankruptcy court's avoidance decision. According to Hyatt, these reasons for dismissal stand on their own and are not dependent upon the court's decision on the avoidance issue.

On October 3, 1997, Dunes filed its notice of appeal of the Dismissal Order. Proceedings before this court were stayed while four related appeals were considered by the Fourth Circuit. On July 22, 1998, the Fourth Circuit dismissed as interlocutory Dunes's appeals from this court's affirmance of the bankruptcy court's decision regarding avoidance. On November 13, 1998, the parties argued this appeal before this court. The appeal is now ripe for decision by this court.

### III. STANDARD OF REVIEW

■■■ Both parties to this appeal have argued over the correct standard of review that this court must employ when reviewing the bankruptcy court's dismissal of Dunes's Chapter 11 case. A bankruptcy court's findings of fact are reviewed under the clearly erroneous standard, and its conclusions of law are reviewed *de novo*. See *Travelers Ins. Co. v. Bryson Properties, XVIII*, 961 F.2d 496, 499 (4th Cir. 1992). In the context of a bad faith dismissal in a bankruptcy case, this court must "review the bankruptcy court's ultimate finding that the filing was not in good

faith as one of fact subject to the clearly erroneous standard." *Carolin Corp. v. Miller,* 886 F.2d 693, 702 (4th Cir.1989); *see also Wharton v. IRS,* 213 B.R. 464, 466 (E.D.Va.1997) ("It is well established that a bankruptcy court's finding that a debtor filed their petition in bad faith is one of fact and is therefore subject only to a 'clearly erroneous' standard of review."); *In re Hollis,* 150 B.R. 145, 147 (D.Md. 1993) (applying the clearly erroneous standard in a bad faith dismissal case); *Waites v. Braley,* 110 B.R. 211, 217 n. 6 (E.D.Va. 1990) ("Although the issue of bad faith ... may be viewed as a mixed question of law and fact, a finding in this regard is subject to the 'clearly erroneous' standard of review.").

Despite this apparently clear precedent as to this court's standard of review, Dunes argues that the lower court's decision to dismiss for bad faith is to be reviewed *de novo* and that "bad faith" is a mixed question of law and fact. *See Landmark Land Co. of Carolina, Inc. v. Cone,* 76 F.3d 553 (4th Cir.1996). In *Landmark Land Co.,* the Fourth Circuit addressed the issue of whether under California law directors of a corporation acted in a good faith manner entitling them to indemnification. *See id.* at 563. In a footnote, the Fourth Circuit observed that "[t]he good faith determination strikes us as a question of law, or at least a mixed question of law and fact; although the facts supporting the good faith determination should be reviewed for clear error, an appellate court should review *de novo* whether or not those facts lead to the conclusion that the [party] acted in good faith." *Id.* at 561 n. 4.

This court will apply the rule enunciated in *Carolin Corp.,* rather than *Landmark Land Co.,* for several reasons. First, language in a footnote in the latter case is obviously dicta. Immediately after the court made this observation, it stated that "we need not at this time decide the appropriate standard of review for the good faith determination because our reasoning

applies under either standard." *Id.* Second, the Fourth Circuit was addressing the standard of review in a diversity case applying California law, not bankruptcy law as the court did in *Carolin Corp.* Third, following the rule in *Carolin Corp.,* rather than *Landmark Land Co.,* is consistent with the approach taken in other circuits. *See, e.g. C–TC 9th Ave. Partnership v. Norton Co.,* 113 F.3d 1304, 1312 n. 6 (2d Cir.1997) ("We review the bankruptcy court's factual conclusions of bad faith under the clearly erroneous standard."); *In re Barrett,* 964 F.2d 588, 591 (6th Cir.1992) (rejecting the application of the *de novo* standard to the bad faith finding of a bankruptcy judge and holding that "a bankruptcy court's good faith determination based on the totality of the circumstances must be reviewed under the clearly erroneous standard"); *In re Fortney,* 36 F.3d 701, 708 (7th Cir.1994) (applying the clearly erroneous standard to a bankruptcy court's determination that a plan was proposed in good faith); *Handeen v. Le-Maire,* 898 F.2d 1346, 1350 (8th Cir.1990) (stating same); *Marsch v. Marsch,* 36 F.3d 825, 828 (9th Cir.1994) (reviewing for abuse of discretion the bankruptcy court's decision to dismiss a case for bad faith and reviewing the bad faith finding for clear error); *Gier v. Farmers State Bank,* 986 F.2d 1326, 1328 (10th Cir.1993) (noting that the inquiry into a debtor's good faith is a factual one, so that a reviewing court must accept the bankruptcy court's determination unless it is clearly erroneous). For these reasons, this court will apply the clearly erroneous standard to the bankruptcy court's determination of bad faith. According to the Fourth Circuit,

a finding is clearly erroneous when there is no evidence in the record supportive of it and also, when, even though there is some evidence to support the finding, the reviewing court, on review of the record, is left with a definite and firm conviction that a mistake has been made in the finding.

*Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1526 (4th Cir.1984).

■ However, the clearly erroneous rule will not "protect findings which have been made on the basis of the application of incorrect legal standards or made in disregard of applicable legal standards." *Id.* In the context of this case, the "bankruptcy court's ruling involving findings of fact may be overturned if the findings are premised on improper legal standards or on proper legal standards improperly applied." *McGavin v. Segal,* 220 B.R. 125, 127 (D.Utah 1998).

Dunes argues that the bankruptcy court's dismissal of its Chapter 11 case is fundamentally flawed because the decision hinges upon the lower court's earlier determination that Dunes was not permitted to seek avoidance of the Hyatt lease. Dunes argues that this legal determination was error and thus cannot provide the basis for affirming the lower court's dismissal of the Chapter 11 case. In contrast, Hyatt argues that this court may affirm the lower court's dismissal because the avoidance decision is correct, and, even if it were not, the avoidance decision is not the only pillar supporting the bankruptcy court's dismissal. This court has searched in vain for a viable ground of dismissal that did not, to a significant degree, depend upon the substantive correctness of the Bankruptcy Court's avoidance ruling. The bankruptcy court's decision to dismiss the debtor's Chapter 11 case and Dunes's appeal from that order stands or falls on the issue of whether Dunes can avoid Hyatt's leasehold interest under the "strong-arm" provision of the Bankruptcy Code. Dunes argues that this ruling is the linchpin of the bankruptcy court's dismissal, so that to reverse the ruling would take the rug from beneath the bankruptcy court's Order of Dismissal. *See Dunes Hotel Assocs. v. S.C. Hyatt Corp.,* Nos. 97–

1943, 97–2482, 153 F.3d 719, 1998 WL 416742, at * 3 (4th Cir. July 22, 1998) (unpublished opinion) ("The dismissal of the bankruptcy petition was in fact based in large part on Dunes's persistent efforts to avoid the lease despite the bankruptcy court's conclusion that it could not do so."). Without it, in the immortal words of Gertrude Stein, "there is no there there." [2] As much as it would like to, this court cannot avoid the avoidance decision.

## IV. LAW/ANALYSIS

This case is one of those rare ducks [3] in which the literal application of certain Bankruptcy Code provisions would result in an outcome at odds with the purposes and goals of the Bankruptcy Code. This appeal presents the court with the issue of whether a solvent debtor in Chapter 11 bankruptcy can avoid an unrecorded leasehold interest under § 544(a) without ever triggering the "benefit of the estate" analysis of § 550(a), when the debtor and the debtor's equity holder are the only entities that would benefit from the avoidance of the lease. The court's analysis of this issue may be summarized as follows. First, Dunes as debtor-in-possession may avoid Hyatt's leasehold interest without ever triggering the requirement that avoidance benefit the estate pursuant to the recovery provisions of § 550(a). Second, even though Dunes may technically side-step § 550, this court finds that the policies and purposes of the Bankruptcy Code preclude Dunes's use of the avoidance powers under the unique circumstances of this case. Third, because the bankruptcy court and this court has long precluded Dunes from seeking avoidance under these circumstances, and the pursuit of this elusive goal is the only reason Dunes remains in Chapter 11, this court affirms the bankruptcy court's dismissal of this case on the grounds of bad faith.

**2.** Gertrude Stein, *Everybody's Autobiography* 289 (1937).

**3.** Although the issues presented by this case may render it a rare duck, this court notes that the duck has been plucked several times before during this litigation, so that one might think there would be no feathers left.

### A. Avoidance of the Leasehold Interest Under § 544(a) Without Triggering § 550(a)

Dunes has argued, and the court has filled-in the interstices of, a persuasive sequential analysis. First, there is a difference between nullification of the leasehold interest and recovery of the actual property transferred under § 550(a). Second, if the leasehold interest were avoided, Dunes would step into the shoes of Hyatt, so that Dunes would receive the leasehold interest, whereas Hyatt would be left clutching only an unsecured claim against the estate. Third, this leasehold interest is automatically preserved and becomes a part of the bankruptcy estate. Fourth, when the leasehold interest becomes part of the estate, it merges with Dunes's fee simple that was already part of the bankruptcy estate at the commencement of this case, so that Dunes would have an unencumbered fee. Fifth, simultaneously with the preservation of the leasehold interest, Dunes would have to seek the return of the actual hotel to the possession of the debtor, so that it may become part of the estate. Dunes as debtor-in-possession may do so pursuant to the turnover provision of § 542, without any need to recover the hotel pursuant to § 550(a). As a result, the benefit to the estate analysis of § 550(a) is technically inapplicable.

### 1. Nullification and Recovery are Separate Concepts

■ Bankruptcy Code § 1107(a) provides that a debtor-in-possession, such as Dunes, is empowered as a trustee. *See* 11 U.S.C. § 1107(a) (1994). Bankruptcy Code § 544(a) expressly provides that a trustee may avoid any transfer of property that is voidable by (1) a hypothetical judicial lien creditor; (2) a hypothetical execution creditor; and (3) a hypothetical bona fide purchaser of real property, whether or not any such creditors or purchasers actually exist. *See* 11 U.S.C. § 544(a) (1994). It is undisputed that Hyatt failed to record its lease and thus failed to perfect its interest in the real property, making it avoidable under § 544(a).[4] Avoidance has three separate and distinct consequences. First, § 544(a) nullifies the transfer. *See* David G. Epstein et al., *Bankruptcy* § 6–80, at 424 (West Hornbook ed.1993). Second, § 551 preserves the transfer automatically by operation of law for the benefit of the estate. *See id.* Third, § 550 may be used, if necessary, to recover property from a third person for the benefit of the estate. *See id.* Therefore, "[a]voidance of a transfer is significant in itself apart from" preservation and recovery. *See id.* at 422. This separation of these three concepts is supported by the Code's legislative history and by reference to other code provisions and case law. Bankruptcy Code § 550 "enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 375 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6331; S.Rep. No. 95–989, 95th Cong., 2d Sess. 90 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5876; *see also Santee v. Northwest Nat'l Bank*, 127 B.R. 471, 473 (Bankr. E.D.Okla.1991) ("[Section] 550(a) is a secondary cause of action after a properly appointed representative has prevailed pursuant to the avoidance sections of the Code. Section 550(a) stands as a recovery statute only and not as a primary avoidance basis for an action, as it will only survive when coupled with the transfer avoidance sections of the Code."). Moreover, the independent nature of Bankruptcy Code §§ 544(a) and 550 is evidenced by the fact that they have different statutes of limitations. *Compare* 11 U.S.C. § 546(a) (1994) (providing for a two year statute of limitations for avoidance actions under § 544(a)), *with* 11 U.S.C. § 550(f) (1994)

---

4. In its August 25, 1995 Order, the bankruptcy court ruled that the unrecorded Hyatt lease is avoidable under § 544(a) and applicable South Carolina real property recording law. This aspect of the lower court's avoidance decision has not been appealed and so is the law of this case.

(providing for a one year statute of limitations for recovery after avoidance). Finally, other courts have acknowledged the separate nature of nullification and recovery. For example, the Bankruptcy Court of the District of Maryland recently analyzed this question and agreed that nullification and recovery were separate and distinct. *See Glanz v. RJF Int'l Corp. (In re Glanz),* 205 B.R. 750, 758 (Bankr.D.Md. 1997). In *In re Glanz,* the court held that the avoidance "cause of action under § 544(a) is not at all affected by the provisions of § 550." *Id.* The court based its reasoning on the argument that

> [t]he avoidance of [an] unperfected lien pursuant to § 544(a) is a meaningful event in and of itself, and requires no further action to be taken by the debtor. There is simply nothing to 'recover' under § 550(a), and therefore the 'benefit to the estate' analysis discussed in the *Wellman* decision is not directly applicable to this lien avoidance action.

*Id.; see also Lippi v. City Bank,* 955 F.2d 599, 605 (9th Cir.1992) ("[A]voidance and recovery from transferees are distinct concepts under bankruptcy law...."); Epstein, *supra* § 6–80, at 422 ("[T]he few courts that have explored this issue have generally concluded that avoidance is separately meaningful from recovery.").

This means that a trustee or debtor-in-possession may avoid a transfer or lien without automatically triggering the recovery provisions of § 550(a). *See Webber Lumber & Supply Co. v. Trucklease Corp. (In re Webber Lumber & Supply Co.),* 134 B.R. 76, 77–80 (Bankr.D.Mass.1991) (finding that the debtor-in-possession could avoid an unrecorded commercial real property lease under § 544(a); court did not analyze § 550(a)). There is no Fourth Circuit precedent to the contrary. The bankruptcy court held, and this court previously affirmed, that Dunes was not permitted to avoid Hyatt's leasehold interest because it could not demonstrate that such an avoidance action benefited the estate. This analysis was based on the apparently binding Fourth Circuit precedent, *Wellman v. Wellman,* 933 F.2d 215 (4th Cir. 1991). However, upon reflection, this case is not controlled by the central holding in *Wellman.* In *Wellman,* the debtor-in-possession sought to set aside an allegedly fraudulent conveyance of stock under § 548 and recover that stock for the estate pursuant to § 550(a). *See id.* at 215–17. The court noted that it had "not faced this § 548/550 standing issue before." *Id.* at 218. However, the Fourth Circuit went on to note that "[c]ourts considering the issue ... have, with unanimity, concluded that a trustee or a debtor-in-possession of a bankruptcy estate cannot maintain an avoidance action under § 548 unless the estate would be benefited by the recovery of the transferred property." *Id.* Despite the sweeping breadth of this statement, the court found that the "conclusion in this case is mandated by the language of § 550(a) that 'the trustee may recover, for the benefit of the estate, the property transferred.'" *Id.* at 218 (*quoting* 11 U.S.C. § 550(a) (1994)). In other words, the Fourth Circuit's holding rested on the "benefit of the estate" language of § 550(a)'s recovery provision, not on an adoption of a *per se* rule that every avoidance action must demonstrably benefit the estate or must lead to the recovery of property transferred. Unlike the fraudulent conveyance action in *Wellman* in which the avoidance of the transfer would have no practical significance without recovery of the stock or its cash value under § 550(a), Dunes's avoidance action seeks only to avoid the unrecorded leasehold interest, without any need to "recover" the lease since it would automatically merge with Dunes's fee simple interest, which became a part of the bankruptcy estate at the commencement of the case. For this reason, the holding of *Wellman* is not directly applicable to the facts of this case. Instead, because nullification is separate and distinct from recovery, this court finds that § 550(a) is not a necessary concomitant to avoidance in this case.

### 2. Debtor–in–Possession Avoids Leasehold Interest, so that Hyatt Retains at Most Only an Unsecured Claim Against the Estate

■ Hyatt argues that avoiding the leasehold interest would merely subordinate it in priority, and that the lease would remain valid and enforceable as between the parties pursuant to state law. *See Pyne v. Hartman Paving, Inc. (In re Hartman Paving, Inc.),* 745 F.2d 307, 309 (4th Cir.1984) (finding that under West Virginia law, an improperly acknowledged deed of trust remains valid between the parties but void against subsequent bona fide purchasers for value without actual notice); *Kennedy Inn Assocs. v. Perab Realty Corp. (In re Kennedy Inn Assocs.),* 221 B.R. 704, 715 (Bankr.S.D.N.Y.1998) (stating that under New York law, an unrecorded assignment of a sublease was still valid between the parties). This court disagrees with Hyatt's analysis regarding the effect of avoidance. When the debtor-in-possession avoids a leasehold interest, state and federal law "work in tandem." Epstein, *supra* § 6–61, at 391. First, federal law confers on the debtor-in-possession the ability to avoid any transfer of property that is voidable by a hypothetical judicial lien creditor, a hypothetical execution creditor, or a hypothetical bona fide purchaser of real property. *See* 11 U.S.C. § 544(a) (1994); 11 U.S.C. § 1107(a) (1994). In this case, the bankruptcy court has properly determined the availability of these powers. Second, the substance of these rights, and in particular, the priority of the debtor-in-possession's claim, "is determined by reference to state law." *McRoberts v. Transouth Fin. (In re Bell),* 194 B.R. 192, 195 (Bankr.S.D.Ill.1996); *see also* Epstein, *supra* § 6–61, at 391 ("[T]he substance of these rights, primarily the priority of these claims in relation to other interests in the property, is then deter-

mined by reference to state law."). In this case, the bankruptcy court has already determined that Dunes would have priority over Hyatt's leasehold interest because it was unrecorded at the commencement of this Chapter 11 proceeding.[5] Third, "[i]f the trustee [or the debtor-in-possession] has priority over a third party's interest under state law, federal law prescribes the consequence." *In re Bell,* 194 B.R. at 192; *see also* Epstein, *supra* § 6–61, at 391 (stating same). Avoidance of the leasehold interest renders it is null and void as a matter of federal law, even if it was a valid transfer and enforceable between the parties under state law. *See In re Bell,* 194 B.R. at 197; *see also Brent Explorations, Inc. v. Karst Enters., Inc. (In re Brent Explorations, Inc.),* 31 B.R. 745, 752 (Bankr.D.Colo.1983) (finding that a security agreement which was valid between the debtor and the creditor as a matter of state law was not perfected against the debtor-in-possession, so that the debtor-in-possession could avoid it pursuant to § 544 and thus leave the creditor unsecured). In *In re Bell,* the Bankruptcy Court of the Southern District of Illinois persuasively stated what this court believes to be the correct position:

> A lien is avoided under § 544(a) as a transfer of the debtor's interest in property, and the consequence of such avoidance is nullification of the transfer. This nullification means that the transfer is retroactively ineffective and that the transferee … legally acquired nothing through it. In the present cases, the trustee's avoidance of the creditors' liens results in nullification of the transfer of property represented by those liens, and the security transactions are ineffective not only as to the trustee but also as to the debtor and creditor themselves as the immediate parties to the transactions.

---

5. In its Order dated August 25, 1995, the bankruptcy court rejected the much-criticized central holding of *In re Hartman Paving,* which charged the knowledge of the debtor to the debtor-in-possession for purposes of prior-

ity under state law. No party appealed this aspect of the lower court's ruling, so it is the law of this case and would likely be the law of this circuit if the Fourth Circuit were to revisit the issue.

*In re Bell*, 194 B.R. at 197 (citations and footnotes omitted); *see also Seidle v. Aeroservice Int'l, Inc. (In re Belize Airways Ltd.)*, 12 B.R. 387, 390 (Bankr.S.D.Fla. 1981) ("The avoidance of a lease completely terminates the lease, while a rejection of a lease of real property [pursuant to § 365] results merely in cancellation of the covenants requiring the debtor's performance in the future but does not automatically terminate the lease so as to divest the lessee of his estate in the property."). If this were not the case, the word "avoid" would have to be read out of the Bankruptcy Code as it is commonly understood to mean "to make legally void, annul." *In re Bell*, 194 B.R. at 197 n. 10; *see Official Unsecured Creditors' Comm. v. Northern Trust Co. (In re Ellingsen MacLean Oil Co.)*, 98 B.R. 284, 290 (Bankr.W.D.Mich. 1989) ("The successful exercise of the trustee's avoiding power causes the affected transfer to become void."); Epstein, *supra* § 6–80, at 422 ("[T]he word 'avoid' is a forceful verb which is commonly understood to mean 'to make legally void: annul.'" (*citing* Webster's Ninth Collegiate Dictionary 120 (1988))); *Black's Law Dictionary* 136 (6th ed. 1990) ("Avoid. To annul; cancel; make void . . . .").

Of course, Hyatt would not be without recourse and could proclaim that the broadsword of the avoidance powers had inflicted a mere "flesh wound" upon its claim, rather than a deathblow.[6] Under § 544(a), the debtor-in-possession in this case "may entirely avoid the inferior third-party interest in the property, and the third-party is left with only an unsecured claim against the debtor's estate." *In re Bell*, 194 B.R. at 192; *see also In re Wheaton Oaks Office Partners Ltd. Partnership*, 27 F.3d 1234, 1244 (7th Cir.1994) (noting that after an unperfected interest is avoided, the once secured creditor is "relegated" to the "status of a general creditor of the bankruptcy estate"); 5 *Col-*

*lier on Bankruptcy* ¶ 544.05, at 544–10 (Lawrence P. King, ed., 15th ed. rev. 1998) ("Because the trustee has the status of a 'judicial lien creditor,' the trustee may, under section 544(a) of the Bankruptcy Code, avoid the unperfected security interest and relegate the debt to the status of a general unsecured claim."); Epstein, *supra* § 6–61, at 391 (noting that after avoidance of the inferior interest, any claim survives only as an unsecured claim). Because this court can conceive of no reason to treat an avoided unrecorded leasehold interest any differently than an avoided unperfected security interest, this illustration of the effect of avoidance is instructive:

> To illustrate how section § 544(a) works to avoid transfers, suppose that a bank acquires an Article 9 security interest in the debtor's existing inventory and equipment, but fails properly to perfect the interest. The debtor files bankruptcy. Because of section 544(a)(1), the trustee is deemed to have a judicial lien on the debtor's inventory and equipment from the very moment the case commenced. Because of state law . . ., the trustee's claim of a judicial lien on the property enjoys priority over the bank's unperfected security interest. Because of federal law, section 544(a), the bank's interest is avoided. The debtor's obligation to the bank remains, but the bank's claim in bankruptcy is entirely unsecured.

Epstein, *supra* § 6–61, at 392. Dunes argues that, unlike the situation in which a trustee avoids an unperfected lien securing a pre-existing debt, leaving the debt remaining but unsecured, there is no creditor-debtor relationship in this case, so that Hyatt would have no claim. In short, no underlying debt means no claim. Under its theory of avoidance in this situation, Dunes could avoid Hyatt's leasehold inter-

---

**6.** Of course, there are flesh wounds and there are flesh wounds. The court is reminded of the scene in *Monty Python's Search for the Holy Grail* wherein the indomitable Black

Knight, during a sword fight in which he has his arms and legs lopped off, proclaims to King Arthur that he has suffered "only a flesh wound."

est and Hyatt would have no claim against the estate. This court disagrees. Dunes's argument is based on the erroneous legal assumption that there is nothing more to a commercial real estate lease than the transfer of a leasehold interest, i.e., the encumbrance on the fee. To the contrary, the hotel lease was both a transfer of a leasehold interest in the real property and a contract to lease the hotel. *See* 14 S.C.Juris. *Landlord & Tenant* § 5, at 167 (1992) ("[P]roperty law and contract law combine to determine the validity of leases."). In the absence of any South Carolina case supporting this well-established rule of law, the following quotation from a recent North Carolina Court of Appeals case adequately supports the proposition:

> A lease is a contract which contains both property rights and contractual rights. Property rights include the right to receive unpaid rents and the reversionary right in the leasehold. Contract rights include the right to sue for breach of express and implied covenants and the right to sue for consequential damages stemming from a breach of a lease. *Once a lease has been terminated, all property rights are extinguished; any contractual rights, however, remain intact.*

*Strader v. Sunstates Corp.*, 129 N.C.App. 562, 500 S.E.2d 752, 756–57 (1998) (citation omitted) (emphasis added); *see also Geraci v. Jenrette*, 41 N.Y.2d 660, 394 N.Y.S.2d 853, 363 N.E.2d 559, 563 (1977) ("The point is that a lease, especially a modern lease, is generally more than a simple conveyance of an interest in land for a fixed period of time. Typically it is also a contract...."). Therefore, if the leasehold interest, the actual encumbrance on the property, were avoided as a matter of federal law, then the enforceable contractual

promises Dunes made to Hyatt would still remain. These promises would form the basis of Hyatt's unsecured claim against the estate.

### 3. Automatic Preservation of the Avoided Leasehold Interest

■ After avoidance, the leasehold interest is automatically "preserved for the benefit of the estate but only with respect to property of the estate." 11 U.S.C. § 551 (1994); *see also* Epstein, *supra* § 6–86, at 425 ("The preservation is not discretionary and is effected without action. It occurs automatically."). Two clarifications of this statute need to be made. First, "[t]he operation of the section is automatic ..., even though preservation may not benefit the estate in every instance." S.Rep. No. 989, 95th Cong., 2d Sess. 91 (1978), 1978 U.S.C.C.A.N. 5877. Therefore, the preserved interest need not always benefit the estate. *See* 5 *Collier on Bankruptcy* ¶ 551.01, at 551–2 (Lawrence P. King, ed., 15th ed. rev. 1998) ("Nonetheless, it appears that all transfers and liens on property of the estate avoided ... are automatically preserved, regardless of benefit to the estate."). Second, the purpose of the limitation that the avoided interest be preserved "only with respect to property of the estate" is "to prevent the trustee from asserting an avoided lien that floats, such as a tax lien, against after-acquired property of the debtor." Epstein, *supra* § 6–87, at 427.[7] However,

> [t]he phrase, "only with respect to property of the estate," has been construed to mean that an avoided transfer becomes property of the estate only if the avoided transfer involves estate property. This construction is wrong. The clear purpose of the phrase. is to limit only the subrogation powers of section 551, not to restrict the reach of sections

---

**7.** The legislative history of the statute provides that "[t]he section as a whole prevents junior lienors from improving their position at the expense of the estate when a senior lien is avoided." S.Rep. No. 989, 95th Cong., 2d Sess. (1978), 1978 U.S.C.C.A.N. 5877 (providing legislative history for § 551); *see also*

*Barclays American/Mortgage Corp. v. Wilkinson (In re Wilkinson)*, 186 B.R. 186, 192–93 (Bankr.D.Md.1995) ("In effect the application of § 551 prevents creditors who hold subordinate liens from receiving a windfall as a result of the avoidance.").

551 and 541 in bringing avoided transfers within the bankruptcy estate.

*Id.* Even if Epstein's reading of § 551 were not correct, the avoided lease had encumbered a hotel that Dunes owned in fee simple as of the commencement of the case, so that the hotel was already property of the estate. With those clarifications duly noted, this court may address Hyatt's argument that Dunes must use the recovery provisions of § 550(a) to recover the leasehold interest for the estate. This court disagrees. In responding to the argument that a trustee must always recover property under § 550 in order to give meaning to the avoidance powers, some commentators recognize that

> this argument ignores the fact that an automatic consequence of avoidance, beyond its nullifying effect, is preservation of the lien or other interest that is avoided, and that the preserved interest automatically becomes part of the estate without recovery. Thus, when a transfer is avoided, the interest which the transfer created becomes part of the estate without further ado.

Epstein, *supra* § 6–80, at 423–24; *see also McRoberts v. Transouth Fin. (In re Bell),* 194 B.R. 192, 197–98 (Bankr.S.D.Ill.1996) ("While lien avoidance under § 544(a) renders a security transaction ineffective as between the parties, the avoided lien does not simply vanish but is preserved for the benefit of the estate pursuant to [§ 551]. The former lienholder's interest in the debtor's property automatically becomes property of the estate. . . ."). At the time Dunes filed its bankruptcy petition, it owned the hotel in fee simple, and the fee became part of the bankruptcy estate. *See* 11 U.S.C. § 541(a)(1) (1994) (providing that the scope of estate property encompasses all legal and equitable interests of the debtor as of the commencement of the Chapter 11 case). If Dunes were permitted to avoid the leasehold interest, the interest would automatically be preserved pursuant to § 551 and become part of the estate pursuant to § 541(a)(4), which provides that the estate consists of "[a]ny interest in property preserved for the benefit of . . . the estate under . . . section 551 of this title." 11 U.S.C. § 541(a)(4) (1994); *see also Walker v. Elam (In re Fowler),* 201 B.R. 771, 781 (Bankr.E.D.Tenn.1996) (noting that an avoided "unperfected security interest . . . becomes property of the estate pursuant to § 541(a)(4)"); *In re Vermont Fiberglass, Inc.,* 45 B.R. 603, 606 (Bankr.D.Vt.1984) ("Read together, sections 551 and 541(a)(4) provide that any transfer of an interest in property avoided under Code section 544 is preserved as estate property for the benefit of the estate."); *Elin v. Busche (In re Elin),* 20 B.R. 1012, 1016 (D.N.J.1982) ("Congress ultimately chose to make such preservation 'automatic' upon exercise of the trustee's powers, and, as a result, any property made subject to those powers is included in the estate by virtue of § 541(a)(4)."); 5 *Collier on Bankruptcy.* ¶ 551.02[2], at 551–5 ("[I]t is clear that any interest in property preserved for the benefit of the estate . . . under section 551 becomes property of the estate under section 541(a)(4)."). As a result, there is no need for resort to the recovery provisions of § 550(a) to bring the avoided leasehold interest into the estate.

### 4. Avoided Leasehold Interest Merges With Fee Simple

■ When the debtor-in-possession owns the fee and avoids the leasehold interest, an interesting quasi-metaphysical phenomenon occurs. The avoided leasehold interest "merges with any residual interest in the debtor which passed to the estate when the bankruptcy case commenced." Epstein, *supra* § 6–80, at 424; *see also In re Bell,* 194 B.R. at 198 (stating same). In short, the leasehold disappears, leaving only the fee simple.

### 5. Under a Literal Reading of the Code, the Debtor–in–Possession May Use § 542 Turnover to Bring the Hotel Back into the Estate and Need Not Use § 550(a) to do so

■ In order to secure complete relief from the lease after avoidance, the only

thing Dunes would have to do would be to physically take possession of the hotel, so as to bring the hotel itself into the estate, rather than simply the right to immediate possession based on a fee simple ownership without encumbrance. *See In re Greater Southeast Community Hosp. Found., Inc.,* 237 B.R. 518, 521 (Bankr. D.C.1999) (noting the distinction between bringing the avoided lien into the estate by automatic preservation and bringing the actual property transferred to effect the creation of the lien into the estate by using the recovery provisions). The question then becomes whether the debtor-in-possession must do so under the § 550 recovery provision or whether it may take possession of the property under the § 542 turnover provision. Bankruptcy Code § 550(a) provides that a trustee who has avoided a transfer may recover the property transferred for the benefit of the estate. *See* 11 U.S.C. § 550(a) (1994). In contrast, § 542(a) "requires anyone holding property of the estate on the date of the filing of the petition ... to deliver it to the trustee." S.Rep. No. 989, 95th Cong., 2d Sess. (1978), 1978 U.S.C.C.A.N. 5870 (providing the legislative intent for § 542).

Hyatt argues that Dunes must use the recovery provisions of § 550(a) in order to bring the hotel into the bankruptcy estate. *See In re Saunders,* 101 B.R. 303, 304–05 (Bankr.N.D.Fla.1989); *see also Federal Deposit Ins. Corp. v. Hirsch (In re Colonial Realty Co.),* 980 F.2d 125, 131 (2d Cir.1992) (adopting the analysis of the court in *In re Saunders*); *Klingman v. Levinson,* 158 B.R. 109, 112 (N.D.Ill.1993) (adopting the position taken by the court in *In re Saunders* and holding that an avoided fraudulent transfer "does not become property of the estate until it is recovered by the trustee"). *But see American Nat'l Bank v. MortgageAmerica Corp. (In re MortgageAmerica Corp.),* 714 F.2d 1266 (5th Cir.1983) (holding that a debtor that has fraudulently transferred

property to prevent creditors from reaching the property retains a continuing legal or equitable interest in that property). In *In re Saunders,* the Bankruptcy Court for the Northern District of Florida properly rejected the Fifth Circuit's view that fraudulently conveyed property was still property of the estate under § 541(a)(1), even in the hands of a third party, based on the notion that the debtor continued to have a "legal or equitable interest" in the property fraudulently conveyed. *See In re Saunders,* 101 B.R. at 304. After noting that property the trustee recovers under § 550 becomes part of the estate under § 541(a)(3), the court held that this latter provision would be "rendered meaningless with respect to property recovered pursuant to fraudulent transfer actions" if a court were to adopt the Fifth Circuit's view that property which has been fraudulently transferred is included in the § 541(a)(1) definition of property of the estate. *See id.* at 305. The court reasoned that

the inclusion of property recovered by the trustee pursuant to his avoidance powers in a separate definitional paragraph [8] clearly reflects the congressional intent that such property is not to be considered property of the estate until it is recovered. Until a judicial determination has been made that the property was, in fact, fraudulently transferred, it is not property of the estate. If it were, the trustee could simply use a turnover action under 11 U.S.C. § 542, and the two (2) year statute of limitations of § 546(a) for actions under §§ 544 and 548 could be avoided.

*Id.* Such analysis is sound, but it does not assist Hyatt in this case for two reasons. First, Dunes does not seek to use turnover instead of avoidance under § 544 and thus sidestep the applicable statute of limitations. Instead, Dunes seeks to use the

---

8. Here, the court is referring to subsection 541(a)(3), which provides that the estate includes "[a]ny interest in property that the trustee recovers under section ... 550 ... of this title." 11 U.S.C. § 541(a)(3) (1994).

avoidance powers of § 544 to nullify Hyatt's leasehold interest, and then use § 542 to require Hyatt to turnover the hotel after the lease has been avoided. Second, Hyatt's argument assumes the result it seeks. Bankruptcy Code § 541(a)(3) simply recognizes that *if* property is recovered by a debtor under § 550, it then becomes property of the estate by operation of that subsection. If no "recovery" under § 550(a) is necessary, then § 541(a)(3) is inapplicable.

Hyatt also argues that Dunes must use the recovery provisions of § 550 to obtain possession of the hotel because § 542 is not listed in § 541(a)(3) as a statutory procedure for recovering any interest in property so as to bring it into the bankruptcy estate. This court disagrees. Bankruptcy Code § 542 requires turnover to the trustee or debtor-in-possession of "property that the trustee may use, sell, or lease under section 363 of this title." 11 U.S.C. § 542(a) (1994). Bankruptcy Code § 363 provides that a trustee may use, sell, or lease "property of the estate." 11 U.S.C. § 363(b)(1), (c)(1) (1994). "Therefore, § 542 mandates only the turnover of 'property of the estate' to a bankruptcy trustee." *Moore v. Manson (In re Springfield Furniture, Inc.)*, 145 B.R. 520, 529 (Bankr.E.D.Va.1992).

The hotel became property of the estate at the commencement of the Chapter 11 case. Bankruptcy Code § 541(a)(1) provides that, but for a few limited exceptions not applicable to this case, the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1994). This provision is expansive enough to ensure that the encumbered fee was property of the estate at the commencement of the case. Furthermore, as noted earlier, after the leasehold interest is avoided, it is preserved, becomes property of the estate pursuant to § 541(a)(4), and merges with the debtor-in-possession's fee interest, so that the debtor-in-possession is considered to have un-encumbered ownership of the hotel as of the commencement of the Chapter 11 case. As a result, Dunes may bring the hotel itself into the estate by using its turnover powers, rather than seeking recovery of the hotel, because § 541(a)(1) is sufficiently broad so to "include[ ] any property recovered by the trustee using the turnover powers conferred by section 542 of the Code, provided the property was merely out of the possession of the debtor, yet remained 'property of the debtor.' " 5 *Collier on Bankruptcy* ¶ 541.04, at 541–10 to 541–11 (Lawrence P. King, ed., 15th ed. rev.1998) (*citing* S.Rep. No. 989, 95th Cong., 2d Sess. (1978), 1978 U.S.C.C.A.N. 5868).

For the reasons set forth above, a literal application of the pertinent Bankruptcy Code provisions would permit Dunes as debtor-in-possession to avoid Hyatt's leasehold interest and obtain possession of the hotel without ever triggering § 550's benefit of the estate analysis.

**B. The Policies and Purposes of the Bankruptcy Code Preclude the Debtor–in–Possession's Use of Avoidance Under the Unique Circumstances of this Case**

Dunes might believe that its unrelenting quest for the Holy Grail of avoidance is at an end, but this court will not allow it to grasp the prized Relic without considering whether, under the unique facts of this case, to do so would be in harmony with the goals and policies of the Bankruptcy Code. Because the literal language of the Bankruptcy Code permits Dunes as the debtor-in-possession to avoid Hyatt's leasehold interest and seek turnover of the hotel without ever triggering the recovery provisions of § 550(a), the benefit to the estate requirement is not a substantive element of this avoidance action. This court will not inject into the avoidance provisions a *per se* requirement that a trustee or debtor-in-possession must demonstrate a "benefit to the estate" as a substantive element of every avoidance ac-

tion. Such a rule would be largely unnecessary. *See 5 Collier on Bankruptcy* ¶ 550.07, at 550–25 ("The trustee, however, usually will file a consolidated action to avoid the transfer and recover the property transferred or its value."). When a trustee seeks to recover the transferred property, the recovery must be for the benefit of the estate. *See* 11 U.S.C. § 550(a) (1994). In those cases, such as this one, where recovery is unnecessary, a *per se* rule requiring a trustee to demonstrate that the avoidance action would benefit the estate may prove unworkable. *See Enserv Co. v. Manpower, Inc./California Peninsula (In re Enserv Co.)*, 64 B.R. 519, 521 (9th Cir. BAP 1986). *In Enserv Co.*, the Bankruptcy Appellate Panel of the Ninth Circuit observed, in the context of a preference action pursuant to § 547, that

> Congress did not intend that actions pursued under Section 547 [preferences] would be subject to question based on equitable considerations, such as who would reap the benefits. Such challenges could only unduly complicate bankruptcy administration, especially in the majority of cases where it is not clear who benefits from successful prosecution of preference actions until late in the administration of the case. There is no statutory requirement that unsecured creditors or even the estate benefit from the voiding of a preference.

*Id.* With no statutory requirement that every avoidance action benefit the estate, this court will not impose such a potentially problematic criterion.

However, the policies of the Bankruptcy Code mandate that this court frustrate Dunes's attempts to avoid Hyatt's leasehold interest under the unique circumstances of this case. "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the inten-

tions of its drafters.' " *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (*quoting Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)) (refusing to stray from the literal application of the Bankruptcy Code under the particular circumstances of that case); *see also Grand v. Northrop Corp.*, 811 F.Supp. 333, 335 (S.D.Ohio 1992) ("[A] court should not enforce the plain meaning of a statute if it would lead to an absurd or odd result.") (*citing Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 454, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989)).

■ In this case, a solvent debtor-in-possession that has already averted foreclosure by paying off its only pre-petition secured creditor now seeks to remain in Chapter 11 bankruptcy for the sole purpose of avoiding Hyatt's unrecorded lease and thus obtaining a potential windfall for itself and its equity holder at the expense of the only remaining non-insider creditor.[9] "The bankruptcy laws are intended as a shield, not as a sword." *In re Penn Central Transp. Co.*, 458 F.Supp. 1346, 1356 (E.D.Pa.1978). The debtor-in-possession in this case seeks to invert this maxim by wielding the battle-ax of avoidance as a weapon for the rapacious. *See Shell Oil Co. v. Waldron (In re Waldron)*, 785 F.2d 936, 940 (11th Cir.1986). This court will not condone such a transmogrification of the Bankruptcy Code for the following reasons. First, permitting Dunes to avoid Hyatt's leasehold interest would be in conflict with the former's fiduciary responsibilities as a debtor-in-possession. A trustee or debtor-in-possession is a fiduciary that should act in the interests of the creditors, not in its own interests. *See* 11 U.S.C. § 1107 (1994) (providing that the debtor-in-possession has the same rights, powers, functions, and duties as a trustee); 11 U.S.C. § 323 (1994) (providing that the

9. As of the date of dismissal of the Chapter 11 case, Hyatt had an unsecured claim for reim-

bursement of capital costs.

trustee "is the representative of the estate"); *Wolf v. Weinstein,* 372 U.S. 633, 649, 83 S.Ct. 969, 10 L.Ed.2d 33 (1963) (noting that a debtor-in-possession "bears essentially the same fiduciary obligation to the creditors as does the trustee for the Debtor out of possession"); *Bowers v. Atlanta Motor Speedway, Inc. (In re Southeast Hotel Prop. Ltd. Partnership),* 99 F.3d 151, 153 n. 1 (4th Cir.1996) ("[F]or purposes of Chapter 11 bankruptcies, a 'debtor-in-possession' is a debtor who remains in possession of the pre-petition assets and administers them for the benefit of the creditor body...."); *Kremen v. Hartford Mut. Ins. Co. (In re J.T.R. Corp.),* 958 F.2d 602, 605 (4th Cir.1992) ("The debtor-in-possession does not act in his own interests, but rather in the interests of the creditors."); *Brent Explorations, Inc. v. Karst Enters., Inc. (In re Brent Explorations, Inc.),* 31 B.R. 745, 752 (Bankr.D.Colo.1983) ("[A]t the filing of the bankruptcy petition the debtor becomes a new entity, the debtor-in-possession with its own rights and duties. This second entity has a fiduciary duty to the estate.").

Second, Dunes as a solvent debtor-in-possession should not be permitted to remain in bankruptcy for the sole purpose of being able to use the strong-arm clause of the Bankruptcy Code to strike down a bilateral contract to the detriment of its only remaining non-insider creditor. To allow Dunes to do so would set the stage for a post-deal negotiation of a lease that was entered into between two sophisticated entities in 1973. *See Barclays–American/Business Credit, Inc. v. Radio WBHP, Inc. (In re Dixie Broad., Inc.),* 871 F.2d 1023, 1028 (11th Cir.1989) ("The Bankruptcy Code is not intended to insulate financially secure sellers or buyers from the bargains they strike."); *Huang v. Pierce (In re Chi–Feng Huang),* 23 B.R. 798, 803 (9th Cir. BAP. 1982) ("[I]t is not true that solvent debtors may petition for bankruptcy and then obtain a windfall by rejecting their executory contracts...."); *In re Albrechts Ohio Inns, Inc.,* 152 B.R. 496, 501 (Bankr.S.D.Ohio 1993) ("It perverts the wholesome economic objective of Chapter 11[as] an instrument for the rehabilitation of troubled businesses [to] nakedly ... allow the remaking of a bilateral contract by one of the parties thereto."); *In re Anderson Oaks (Phase I) Ltd. Partnership,* 77 B.R. 108, 111 (Bankr.W.D.Tex. 1987) ("Two-party disputes such as this simply have no place in bankruptcy. Allowing the dispute to be resolved in bankruptcy confers unwarranted leverage in favor of the Debtors, without the attendant equities that normally justify that leverage.") (citations omitted); *Furness v. Lilienfield,* 35 B.R. 1006, 1009 (D.Md.1983) ("Chapter 11 was designed to give those teetering on the verge of a fatal financial plummet an opportunity to reorganize on solid ground and try again, not to give profitable enterprises an opportunity to evade contractual or other liability."). While once the reason for Dunes's presence in bankruptcy may have been motivated by a desire to refinance the Aetna loan and emerge like a Phoenix from the ashes of a Chapter 11 re-organization, its sole motivation for remaining in bankruptcy is transparent and undeniable—to avoid Hyatt's unrecorded lease. Such an action is not necessary to convert Dunes into a solvent entity because Dunes is already solvent. Moreover, such an action is not necessary to pay any secured creditors because Aetna, the only pre-petition secured creditor has been paid off by Dunes's equity holder which, as the only current secured creditor, did not require that the debtor obtain avoidance as a condition of funding the payment to Aetna.

Finally, permitting a fiduciary such as the debtor-in-possession to use the strong-arm provision of § 544(a) to create a windfall for itself and its equity holder in derogation of the interests of Hyatt, the only remaining non-insider creditor, is contrary to the purpose of the avoidance powers as enunciated by numerous courts and commentators. *See McFarland v. Leyh (In re Texas Gen. Petroleum Corp.),* 52 F.3d 1330, 1336 (5th Cir.1995) ("[T]he general

policy behind the assertion of avoidance actions [is that t]he proceeds recovered in avoidance actions should not benefit the reorganized debtor; rather, the proceeds should benefit the unsecured creditors."); *Vintero Corp. v. Corporacion Venezolana De Fomento (In re Vintero Corp.)*, 735 F.2d 740, 742 (2d Cir.1984) (noting that a debtor-in-possession is not given the right to avoid "to create a windfall" for itself); *Whiteford Plastics Co. v. Chase Nat'l Bank*, 179 F.2d 582, 584 (2d Cir.1950) (holding that a debtor could not avoid the lien of a creditor when the benefit would flow only to the debtor and not to the creditors); *Kennedy Inn Assocs. v. Perab Realty Corp.*, 221 B.R. 704, 714 (Bankr. S.D.N.Y.1998) ("Avoidance powers are granted to a trustee or debtor in possession to benefit the estate."); *Glanz v. RJF Int'l Corp. (In re Glanz)*, 205 B.R. 750, 758 (Bankr.D.Md.1997) ("[A] debtor's power to avoid transfers pursuant to § 544(a) is not unrestricted, and equitable principles may be applied to bar a lien avoidance action where the avoidance does not accrue to the benefit of creditors but instead creates a windfall for the debtor.") [10]; *McRoberts v. Transouth Fin. (In re Bell)*, 194 B.R. 192, 196 (Bankr.S.D.Ill.1996) ("[A] Chapter 13 *trustee has* both statutory and constitutional *standing to avoid* unperfected liens *when such avoidance would* increase the amount of disposable income to be allocated among unsecured creditors and thus *benefit the estate*.") (emphasis added); *Emerson v. Maples (In re Mark Benskin & Co.)*, 161 B.R. 644, 653 (Bankr. W.D.Tenn.1993) ("The Congressional Policy is clear: Upon the filing of a bankruptcy the avoidance powers are intended to benefit all creditors of the bankruptcy estate."); *A.M. Mancuso v. Continental Bank Nat'l (In re Topcor, Inc.)*, 132 B.R. 119, 125 (Bankr.N.D.Tex.1991) ("[T]he general policy of the [Bankruptcy Code is] to provide trustees broad avoidance powers to maximize the value of the estate for

the benefit of all creditors."); *Greenbelt Coop., Inc. v. Werres Corp. (In re Greenbelt Coop., Inc.)*, 124 B.R. 465, 472–73 (Bankr.D.Md.1991) (holding that a debtor-in-possession cannot use the power of avoidance "to glean a windfall for the debtor," but must instead provide "some benefit to creditors from the avoidance"); *Join–In Int'l (U.S.A.) Ltd. v. New York Wholesale Distribs. Corp. (In re Join–In Int'l (U.S.A.) Ltd.)*, 56 B.R. 555, 561 (Bankr.S.D.N.Y.1986) ("A debtor in possession generally has the power to set aside voidable transfers. The debtor in possession is acting as a trustee for the benefit of creditors. As long as the unsecured creditors receive some benefit from the recovery of the alleged fraudulent conveyance, the debtor will be allowed to proceed with the avoidance action. However, if the recovery of the alleged fraudulent conveyance will solely benefit the debtor it will not be permitted to maintain the proceeding.") (citations omitted); *In re Chapman*, 51 B.R. 663, 666 (Bankr.D.C.1985) ("[T]his Court is persuaded by its review of the cases that strong-arm-clause lien avoidance is permitted solely to benefit creditors, and where it will benefit only the Debtor, the courts decline to permit lien avoidance."); *J.E. Jennings, Inc. v. William Carter Co. (In re J.E. Jennings, Inc.)*, 46 B.R. 167, 169 (Bankr.E.D.Pa. 1985) ("The avoidance powers of the [Bankruptcy] Code are intended for the benefit of the debtor's creditors. Thus, the debtor-in-possession holds avoidance powers in trust for the benefit of creditors. . . . Where no benefit to the estate will result, a debtor-in-possession may not exercise the avoidance powers of a trustee.") (citations omitted); Epstein, *supra* § 6–2, at 276 ("[A]voidance is designed to enlarge the estate for the benefit of creditors."); *id.* § 6–61, at 390 ("[The strong-arm power of § 544(a)] effectively gives the trustee, in her own right *for the benefit*

---

**10.** The court notes that even the *In re Glanz* decision, heralded by Dunes as the flagship of its supporting authority, acknowledges that

equitable principles should preclude a debtor from receiving a windfall from avoidance.

*of the estate,* the status ... of two classes of claimants of property who claim through the debtor as of the time of bankruptcy.") (emphasis added).

Whether a particular action provides a windfall for the debtor or a benefit for the estate "depends on a case-by-case, fact-specific analysis." *Wellman v. Wellman,* 933 F.2d 215, 218 (4th Cir.1991). The debtor-in-possession makes two arguments why avoidance would benefit the estate and not actually be simply a windfall for the debtor and its equity holder. First, Dunes argues that despite its original unconditional funding of the Aetna claim, GEPT subsequently conditioned its funding on the debtor-in-possession's pursuit of the avoidance claim, so as to benefit the estate at the time of the funding by protecting the hotel property from foreclosure or liquidation. *See Winston & Strawn v. Kelly (In re Churchfield Management & Inv. Corp.),* 122 B.R. 76, 82–83 (Bankr. N.D.Ill.1990) (holding that even though a financier of the estate would be the only entity to directly benefit from the avoidance actions, the estate benefitted at the time the financier funded the reorganization plan, partially in exchange for an assignment of the right to pursue avoidance actions, when it was "unlikely that either a distribution to the unsecured creditors, or a successful reorganization, would have taken place" without the infusion of money); *Tennessee Wheel & Rubber Co. v. Captron Corp. Air Fleet (In re Tennessee Wheel & Rubber Co.),* 64 B.R. 721, 726 (Bankr.M.D.Tenn.1986) ("In this case, the benefit to [the debtor's] creditors is great. Absent the post-confirmation line of credit advanced by [the bank], unsecured claimholders would have received no distribution. The retention of the power to pursue avoidance actions coupled with the grant of a security interest in the debtor's post-confirmation assets was the consideration for [the bank's] post-petition and post-con-

firmation advances to this debtor. No reorganization was possible without new advances from [the bank]. The possibility of any recovery by the unsecured claimholders was dramatically enhanced by the retention of the avoidance powers.... This estate has unsecured priority and administrative claimants and unpaid post-petition trade creditors who are dependent for payment upon the success of reorganization. The preference and fraudulent conveyance recoveries are essential to the debtor's ability to pay its creditors pursuant to the confirmed plan.").

No benefit to the estate was conferred at the time of GEPT's funding of Aetna's oversecured claim. Outside of the § 362 automatic stay, Aetna could have been paid in full from its collateral, as even Dunes agrees that the hotel was worth at least $52.5 million,[11] and Aetna's claim was for around $49 million. Alternatively, according to the Debtor's Plan & Disclosure Statement & Conditional Modification before the bankruptcy court at the time of the initial summary judgment hearing on the avoidance actions, the repayment of Aetna's debt was to be funded or guaranteed by GEPT. In either case, even before GEPT made its offer to purchase Aetna's claim on the condition that the debtor-in-possession pursued the avoidance actions, Aetna's repayment in full was not dependent upon, nor would it have been materially enhanced by, the avoidance of Hyatt's leasehold interest. Even after GEPT made its funding commitment conditioned on the debtor-in-possession's pursuit of avoidance, this court agrees with the bankruptcy court's finding that

> GEPT's willingness to acquire the only substantial non-contingent claim against Dunes, without requiring the prior termination of the SC Hyatt Agreement, but merely Dunes'[s] continued pursuit of termination through this Reconsideration Motion, demonstrates that avoid-

11. At the time of the dismissal hearing on August 21, 1997, the value of the hotel with-

out avoidance was approximately $60 million.

ance or rejection is not actually necessary to satisfy or benefit the creditors but only to benefit Dunes and GEPT. (Bankr.Order, dated Dec. 5, 1995 at 25–26) Therefore, this court rejects Dunes's argument that GEPT's funding commitment in exchange for Dunes's promise to pursue avoidance actually conferred a benefit on the estate at the time of the funding. With no benefit realized years ago at the time Aetna's claim was paid, the estate will certainly not realize a benefit from avoidance now. GEPT's financing condition was contingent upon Dunes's *pursuit* of the avoidance claim, not on actually achieving avoidance. To say the least, Dunes has been indefatigable in its pursuit of avoidance. Thus, Dunes has already satisfied the conditions of its agreement with GEPT, so that regardless of the decision on the issue of avoidance made by the bankruptcy court, this court, or even the Fourth Circuit, the estate will not be benefitted any more or any less than it already has been several years ago. In short, actual avoidance of the Hyatt lease was and still is unnecessary to pay any creditor. *See Wellman v. Wellman,* 933 F.2d 215, 219 (4th Cir.1991) (finding that the avoidance action did not benefit the estate because, *inter alia,* the creditors would have been paid even without the avoidance action).

Second, Dunes argues that benefit to the estate is to be construed broadly and not to be tied to the question of whether avoidance is actually necessary for the debtor-in-possession to meet its obligations to creditors. *See Citicorp Acceptance Co. v. Robison (In re Sweetwater),* 884 F.2d 1323, 1327 (10th Cir.1989) (finding that avoidance would benefit the estate when the funds from the avoided transfers would pay unsecured creditor's administrative claims and "the remainder will go to the reorganized debtor who will then be in a better position to meet its financial commitments, if any, under the plan," so that any successful recovery would benefit the other unsecured creditors of the debtor);

*Trans World Airlines, Inc. v. Travellers Int'l AG. (In re Trans World Airlines, Inc.),* 163 B.R. 964, 969, 973 (Bankr.D.Del. 1994) (construing the benefit of the estate broadly so as to include the situation in which "unsecured creditors will benefit from the enhanced value of [the] reorganized [debtor] by reason of being shareholders of the reorganized debtor" under the plan); *Funding Sys. Asset Management Corp. v. Chemical Bus. Credit Corp. (In re Funding Sys. Asset Management Corp.),* 111 B.R. 500, 523–24 (Bankr. W.D.Pa.1990) (finding that all that is required to demonstrate that avoidance would benefit entities other than the debtor is that "recovery by Debtor will increase its assets and improve its financial health to the extent that the likelihood is improved of its being able to satisfy its obligations to its creditors under the Plan. The relevant standard has been met in this case. Recovery by Debtor will redound to the benefit of unsecured creditors in that recovery will improve Debtor's 'financial health' by increasing its assets and therewith the likelihood that Debtor will be able to meet its obligations under the Plan"); *see also Greenbelt Coop. v. Werres Corp. (In re Greenbelt Coop.),* 124 B.R. 465, 473, 474 (Bankr.D.Md.1991) (applying the same standard as in *In re Funding Sys. Asset Management Corp.* and finding that avoidance benefitted the estate because it would "improve Debtor's financial health" and "increase the likelihood that Debtor's reorganization will be successful and that Debtor will be able to make its deferred plan payments" to its creditors); *Glanz v. RJF Int'l Corp. (In re Glanz),* 205 B.R. 750, 758 (Bankr.D.Md.1997) (quoting the standard from *In re Funding Sys. Asset Management Corp.* and applying it to the facts before the court).

There is a fatal flaw in Dunes's argument. Unlike all the cases cited by Dunes, there simply are no non-insider creditors to be paid in this case, so that these non-existent creditors cannot be benefitted either directly or indirectly by avoidance. Therefore, even if this court were to accept

Dunes's argument that avoidance of Hyatt's leasehold interest may increase the value of the estate by permitting Dunes to lease the hotel to another company at a better monthly rate, the only entities that would benefit as a result would be the debtor Dunes and its equity holder GEPT, and "[t]he debtor or its equity holders are the last category of persons or entities which the code is designed to benefit." *Capital Management Co. v. Alison Corp. (In re Alison Corp.),* 9 B.R. 827, 829 (Bankr.S.D.Cal.1981).

For the reasons set forth above, this court refuses to allow Dunes to avoid Hyatt's lease. To do so would clearly be in contravention of the policies and purposes of the Bankruptcy Code.

### C. Affirmance of the Bankruptcy Court's Dismissal of the Chapter 11 Case

■■■■■ To reverse the Old Chinese proverb by Lao-tzu, a journey of a thousand miles must end with a single step. The last step in this court's analysis is to affirm the bankruptcy court's dismissal of the Chapter 11 case. Section 1112 of the Bankruptcy Code gives the bankruptcy court "substantial discretion" to dismiss a Chapter 11 reorganization case for any one of a non-exhaustive list of ten "causes." *See* 11 U.S.C. 1112(b) (1994); *Toibb v. Radloff,* 501 U.S. 157, 165, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991). The bankruptcy court dismissed Dunes's Chapter 11 case for a number of reasons, including the debtor-in-possession's bad faith in maintaining and prosecuting its bankruptcy case. Although not enumerated in § 1112(b), courts have recognized that a debtor's bad faith filing or conduct of its case is sufficient "cause" for dismissal under that section. *See Kestell v. Kestell (In re Kestell),* 99 F.3d 146, 148 (4th Cir.1996); *Carolin Corp. v. Miller,* 886 F.2d 693, 700 (4th Cir.1989); *see also Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.),* 779 F.2d 1068, 1071 (5th Cir.1986) ("Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings."). A determination of whether bad faith exists is based on the "totality of circumstances." *Carolin Corp.,* 886 F.2d at 701. "[B]oth objective futility and subjective bad faith [must] be shown in order to warrant dismissals for want of good faith in filing." *Id.* at 700–01. Even though the stringent nature of the bad faith test may not be as appropriate three years into a Chapter 11 case as it is at the portals to the bankruptcy forum,[12] there is sufficient evidence in the record to support the objective futility and subjective bad faith requirements of that test, thus permitting dismissal of the case.

■■■■ First, the subjective bad faith inquiry is designed to determine whether the debtor's real motivation is to abuse the bankruptcy reorganization process instead of using Chapter 11's provisions to reorganize or rehabilitate an existing enterprise. *See id.* at 702. The record in this case

---

**12.** The Fourth Circuit observed that such a stringent test is justified for

> threshold denials of Chapter 11 relief. Such a test obviously contemplates that it is better to risk proceeding with a wrongly motivated invocation of Chapter 11 protections whose futility is not immediately manifest than to risk cutting off even a remote chance that a reorganization effort so motivated might nevertheless yield a successful rehabilitation. Just as obviously, it contemplates that it is better to risk the wastefulness of a probably futile but good faith effort to reorganize than it is to risk error in

> prejudging futility at the threshold. We believe that such a stringent test is necessary to accommodate the various and conflicting interests of debtors, creditors, and the courts that are at stake in deciding whether to deny threshold access to Chapter 11 proceedings for want of good faith in filing.

*Carolin Corp.,* 886 F.2d at 701. Three years into the bankruptcy proceedings, the rationale for the stringent. nature of the test is less compelling. However, the facts before this court satisfy the standard regardless.

supports the conclusion that the bankruptcy court was not clearly erroneous in its finding that Dunes and Hyatt have long been involved in a two-party dispute in bankruptcy court and that Dunes has sought to use the avoidance power as a litigation tactic in that dispute. *See Jasik v. Conrad (In re Jasik),* 727 F.2d 1379, 1383 (5th Cir.1984) ("The bankruptcy judge is in the best position to assess the good faith of the parties' proposals."). The bankruptcy court concluded in its order of dismissal that

> [s]ince GEPT bought the Aetna claim, Dunes'[s] only remaining purpose in this case is to terminate the Lease. To ask this Court to maintain this case for such a purpose for more than two years after it has been determined that such an avoidance under the Bankruptcy Code is impermissible is an abuse of the bankruptcy process. Clearly, the termination or avoidance of the Lease has always been the driving force behind Dunes'[s] petition based upon representations by the cognizant GEPT Trustee in September 1995 that funds were always available to pay Aetna, but GEPT would not do so while Hyatt was Dunes'[s] lessee.

(Bankr.Dismissal Order, dated Sept. 26, 1997 at 34) This court agrees with the lower court that the Bankruptcy Code does not permit such a use of its provisions solely as a litigation tactic. *See In re C–TC 9th Ave. Partnership,* 193 B.R. 650, 654 (Bankr.N.D.N.Y.1995) ("Where the primary purpose of the filing of a Chapter 11 case is as a litigation tactic, the petition may be dismissed for lack of good faith."); *In re Reiser Ford, Inc.,* 128 B.R. 234, 238 (Bankr.E.D.Mo.1991) (dismissing a Chapter 11 case for bad faith when the debtor sought simply to avail itself of avoidance powers); *In re Newsome,* 92 B.R. 941, 944 (Bankr.M.D.Fla.1988) (dismissing a Chapter 13 case on the grounds that it was filed in bad faith because the debtor's sole purpose was to get out of a contract that it now considered burdensome and oppressive).

Second, the "objective futility inquiry is designed to insure that there is embodied in the petition 'some relation to the statutory objective of resuscitating a financially troubled [debtor].'" *Carolin Corp.,* 886 F.2d at 701 (*quoting Connell v. Coastal Cable TV, Inc. (In re Coastal Cable TV, Inc.),* 709 F.2d 762, 765 (1st Cir.1983)). It is objectively futile for Dunes to remain in bankruptcy. Dunes filed its Chapter 11 case to avoid foreclosure on the hotel and to extricate itself from the Hyatt lease by avoiding or rejecting it under the applicable provisions of the Bankruptcy Code. Dunes avoided foreclosure when GEPT, its equity holder, paid off Dunes's largest prepetition creditor. At the dismissal hearing on August 21, 1997, Dunes's counsel conceded that GEPT was not likely to foreclose on Dunes. And now the promise of avoidance has been snuffed out. If Dunes cannot as a matter of law avoid Hyatt's leasehold interest, any further Chapter 11 reorganization proceeding would be futile. Both reasons for being in bankruptcy are now gone. The debtor-in-possession would apparently agree. At the oral argument for this appeal, counsel for Dunes admitted that "if we are not entitled to avoid, then the rationale of the [dismissal] order ... stands up." (Transcript of Hearing on Nov. 13, 1998 at 31)

### IV. CONCLUSION

After reviewing the bankruptcy court's avoidance decision *de novo,* this court affirms the bankruptcy court's order granting summary judgment on Dunes's avoidance action and finds that Dunes cannot assert an avoidance action against Hyatt because the Bankruptcy Code does not permit a debtor-in-possession to avoid an interest to provide a windfall for the debtor and its equity holder. After reviewing the bankruptcy court's order dismissing the Chapter 11 case on the ground of bad faith, this court concludes that the finding of bad faith was not clearly erroneous and thus it affirms the bankruptcy court's order.

It is therefore,

**ORDERED,** that the above-referenced Orders of the bankruptcy court are **AFFIRMED.**

**AND IT IS SO ORDERED.**